

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-21-00007-CV

**IN THE INTEREST OF H.S.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA01861
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena Chapa, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: June 23, 2021

AFFIRMED

Dad appeals the trial court's order terminating his parental rights to his child, H.S.[i]  Dad asserts the evidence was legally and factually insufficient to support the trial court's best-interest-of-the-child finding.  We affirm the trial court's order.

### BACKGROUND

Appellant Dad has one child with Mom: H.S.  The Department of Family and Protective Services opened this case due to Mom's neglect of H.S., and they removed H.S. after an allegation that Mom threw H.S. out of a car window.  Dad was in jail pending a drug-related charge, and at the time of trial, he had not seen four-year-old H.S. for three years.  Even before Dad went into

---

[i] To protect the minor's identity, we use aliases for Appellant, family members, and the child.  *See* TEX. R. APP. P. 9.8.

custody, he did not know where Mom and H.S. lived. He lost contact with them and did not know how to reach them. Dad was aware that Mom had a mental illness, but nevertheless failed to request visitation with H.S. or challenge Mom's custody of H.S.

When the Department removed H.S. from Mom's care, they placed H.S. with her maternal grandfather and step-grandmother. Testimony at trial indicated that H.S. was thriving with her grandparents and that her grandparents wanted to adopt her.

Dad objected to H.S.'s placement being permanent, asking instead for more time to complete services with the Department so that he could retain his parental rights. However, over the course of H.S.'s case, Dad failed to communicate with the Department or respond when the Department tried to reach out regarding a family plan. Further, although Dad hoped to be released from jail pending his criminal case, the possibility of Dad being released from custody either to complete services with the Department or to be available to H.S. seemed uncertain since he was facing ten to twelve years as a potential sentence in his criminal case.

After hearing the evidence in favor of terminating H.S.'s parents' rights, the trial court found by clear and convincing evidence that Dad's parental rights should be terminated under Family Code section 161.001(b)(1)'s grounds (N), (O), and (C), and that terminating Dad's parental rights was in H.S.'s best interests. The trial court also terminated Mom's parental rights. Dad appeals.

### EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

**BASES FOR TERMINATING DAD'S PARENTAL RIGHTS**

**A.      Dad's Parental Conduct**

Dad does not challenge the trial court's findings that his parental conduct met statutory grounds (N), (O), and (C).  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (C).

**B.      Best Interest of the Child**

Dad challenges the sufficiency of the evidence for the trial court's finding that terminating his parental rights is in his child's best interests.  *See id.* § 161.001(b)(2).  The Family Code statutory factors[5] and the *Holley* factors[6] for determining best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interests of the child.

**C.      Witnesses at Trial**

During the bench trial, the court heard testimony from a Department caseworker and Dad. The trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony."  *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *cf. In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).  The trial court heard the following testimony.

**D.      Evidence of Best Interest of the Child**

Dad has a history of drug use and domestic violence, and he has been absent from H.S.'s life.  As noted by the Department, Dad was unable to prevent the harm that led to H.S.'s removal from Mom.  In fact, this was H.S.'s second case and removal with the Department of Family and Protective Services.  Mom completed services in the first case, and H.S. was returned to her.  But Mom continued to experience challenges with her mental health.  She slept during the day, stayed awake at night, did not properly care for H.S., and refused help from others.  She would pull on H.S.'s ear, and she threw away H.S.'s clothes and belongings.  Dad was aware of Mom's mental health condition but acquiesced when Mom told him to leave H.S. and her alone.  He was skeptical

when H.S. was returned to Mom the first time, but he did nothing to intervene in H.S.'s care. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2), (3), (4), (7), (8); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (H)).

According to the caseworker, there was some concern regarding H.S.'s development before she was placed with her grandparents. The concern dissipated after H.S. was placed with her grandparents and started talking more. H.S. developed a good relationship and bond with her grandparents, adapted to a structured routine, and now states that she feels safe. H.S.'s appearance is well-cared for, and she will soon begin kindergarten. She is also in therapy, and the caseworker notes that H.S.'s grandparents love and care for her. The caseworker testified that H.S.'s placement represents a new life for her.

The Department agreed that H.S.'s grandparents should adopt her and that her parents' rights should be terminated. *See* TEX. FAM. CODE ANN. § 263.307(b)(6), (9), (6), (11), (12), (13); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (D), (F), (G), (H)).

### E.    Dad's Service Plan Compliance

Although Dad was in jail during the case, services were available to him, but he did not engage in them. He also did not sign and return the Department's family plan. He never tried to contact or communicate with the caseworker. The caseworker, however, visited Dad in jail to go over the plan. During the visit, Dad voiced his interest in completing services, but because he was facing a ten to twelve-year sentence in his criminal case, he was unsure what he could manage. He said he would investigate, but he did not follow through. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *Holley*, 544 S.W.2d at 372 (factor (H)).

### F.    Dad's Care for H.S.

Dad remembers a few past occasions on which he delivered clothes and presents for H.S. But when the caseworker visited Dad in jail, Dad mentioned that he had not seen four-year-old

H.S. in three years, and he did not know her. Even after the caseworker's visit, Dad did nothing to establish a connection with H.S. Dad never paid any support for H.S., and he did not maintain any relationship with her. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (12); *Holley*, 544 S.W.2d at 372 (factor (H)).

## G. Options, Recommendations

H.S. was placed with her maternal grandparents, who intend to adopt her. The Department and H.S.'s guardian ad litem opined that it would be in H.S.'s best interest for her parents' rights to be terminated.

Considering all the evidence under the two evidentiary standards, we conclude the trial court could have formed a firm belief or conviction that terminating Dad's parental rights to H.S. was in H.S.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

### CONCLUSION

Because the evidence was legally and factually sufficient to support the trial court's findings by clear and convincing evidence (1) of at least one predicate ground for termination and (2) that termination of Dad's parental rights is in the best interest of his child, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX.

FAM. CODE ANN. § 161.001(b). Here, the trial court found Appellant's course of conduct met the following criteria or grounds:

> (C) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;
>
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment;
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child

*Id.* § 161.001(b)(1).

[3] <u>Legal Sufficiency</u>. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

[4] <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

> (1) the child's age and physical and mental vulnerabilities;
> (2) the frequency and nature of out-of-home placements;
> (3) the magnitude, frequency, and circumstances of the harm to the child;
> (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
> (5) whether the child is fearful of living in or returning to the child's home;
> (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
> (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
> (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
> (9) whether the perpetrator of the harm to the child is identified;
> (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
> (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
> (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:
> (A) minimally adequate health and nutritional care;
> (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
> (C) guidance and supervision consistent with the child's safety;
> (D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).